STATE of Wisconsin, EX REL., Frank E.
STEVENS, III, Petitioner,

v.

CIRCUIT COURT FOR MANITOWOC COUNTY,
The Honorable Fred B. Hazlewood, Circuit
Judge, Presiding, and District Attorney For
Manitowoc County, Respondents.

Supreme Court

*No. 87-0203-W. Argued September 8, 1987.—Decided November
4, 1987.*

(Also reported in 414 N.W.2d 832.)

240

There was a petition and oral argument by *James A. Walrath,* and *Shellow, Shellow & Glynn,* Milwaukee.

For the respondents there was a response and oral argument by *Thomas J. Balistreri,* assistant attorney general, with whom on the response was *Donald J. Hanaway,* attorney general.

DAY, J. This petition for supervisory writ is before us on certification from the court of appeals pursuant to sec. (Rule) 809.61, Stats. The writ seeks reversal of an order, made by Judge Fred H. Hazlewood of Manitowoc county, excluding the general public, except the news media, from the preliminary examination in a sexual assault case at the request of the state's complaining witness under the mandatory exclusion provision of sec. 970.03(4).[1] The defendant

---

[1]Section 970.03(4), Stats., (1985–86) reads:

**970.03 Preliminary examination. ...** (4) If the defendant is accused of a crime under s. 940.225, the judge shall, at the request of the complaining witness, exclude from the hearing all persons

objects to closure in this manner, claiming it violates his sixth amendment right to "public trial." We conclude that the mandatory provision of sec. 970.03(4), relied upon by the trial court, is unconstitutional. We therefore grant the writ, reversing the order of the trial court, and remand for further proceedings.

The facts of this case are not in dispute. The defendant, Frank E. Stevens III, (Defendant) was charged pursuant to sec. 940.225, Stats., with seven counts of first degree sexual assault.[2] Under the mandatory exclusion provision of sec. 970.03(4) and on behalf of the complaining witness, a fourteen year old girl, the state requested that the preliminary examination of the matter be closed. The Defendant objected to closure. The circuit court ordered the hearing closed to the general public, except for members of the news media.[3] The parties agree on appeal that the

not officers of the court, members of the witness's or defendant's families or others deemed by the court to be supportive of them, or otherwise required to attend. The judge may exclude all such persons from the hearing in any case where the defendant is accused of a crime under s. 940.225 or a crime against chastity, morality or decency.

[2]Section 940.225, Stats., provides in pertinent part:

**940.225** (1) **First degree sexual assault.** Whoever does any of the following is guilty of a Class B felony: . . . (d) Has sexual contact or sexual intercourse with a person 12 years of age or younger.

The complainant in this action was under the age of twelve at the time of the alleged assault.

[3]The trial court's order stated:

The State having moved the Court pursuant to Section 970.03(4) Wis. Stats. and upon the request of the complaining witness in the above case requesting exclusion of the public during the prelimi-

circuit court also intended, pursuant to sec. 970.03(4), to allow members of the parties' families to attend, although this was not a part of the court's written order. No evidentiary hearing was held and no specific findings of fact were made by the circuit court to substantiate a compelling basis for this closure, because none were required under sec. 970.03(4). The circuit court did conclude, however, that allowing the news media to attend would accommodate the defendant's constitutional rights, while protecting the juvenile victim from unnecessary emotional trauma.

The Defendant argues on appeal that his sixth amendment right to public trial extends to the preliminary examination and that the provision of sec. 970.03(4), Stats., mandating exclusion in sexual assault cases upon the request of the complainant, unconstitutionally infringes upon that right. As a result, he contends that closure of the preliminary examination in this case was improperly ordered. He also argues that allowing news media attendance does not protect his right to a "public" trial. The Defendant asserts that the news media is not an adequate substitute for the general public since there is no assurance of attendance by any of the media at a preliminary examination, and because media interests may be inimical to those of a defendant.

The state concedes that a defendant's right to public trial is infringed by the mandatory closure

nary examination of this matter, and the Court having heard arguments on the motion:

IT IS HEREBY ORDERED that the preliminary examination to be held in this matter on February 12, 1987 is closed to the general public.

IT IS FURTHER ORDERED that this does not apply to members of the news media.

243

provision of sec. 970.03(4), Stats., if a defendant objects to such closure. The state contends, however, that no closure sufficient to invoke sixth amendment protections arose here because allowing attendance of the news media in effect created an "open" hearing. The state argues that the members of the news media are themselves members of the general public and have the further potential to reach the public at large through publication, therefore, no closure occurs when they are allowed to attend.

In examining the issues raised by these arguments, we must first determine whether a defendant's sixth amendment right to public trial extends to preliminary examinations. This is a question of law, since the facts are not in dispute, and this court need not defer to the trial court's reasoning. *Kramer v. Horton,* 128 Wis. 2d 404, 414, 383 N.W. 2d 54, 58, *cert. denied,* — U.S. —, 107 S. Ct. 324 (1986).

The sixth amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." This "public trial" right is reinforced in Wisconsin by sec. 757.14, Stats., which states, in pertinent part, that "[t]he sittings of every court shall be public and every citizen may freely attend the same, except if otherwise expressly provided by law . . . ." The "public trial" right is also referred to in art. I, sec. 7 of the Wisconsin Constitution.[4] Section 7 does

[4]Article I, sec. 7 of the Wisconsin Constitution provides:

**Rights of accused.** Section 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecu-

not expressly provide that preliminary examinations should be open to the public. The public trial provision in prosecutions by indictment refers to an indictment handed down by a grand jury which is held in secret. The information referred to follows a preliminary examination or waiver of such hearing by the defendant.

In *State ex rel. Kennon v. Hanley,* 249 Wis. 399, 401, 24 N.W.2d 683, 684 (1946), this court specifically upheld the closure of a preliminary examination in a sexual assault case. The *Kennon* court concluded that preliminary examinations are not trials and, therefore, no right of "public trial" attaches to these proceedings. *Accord State ex rel. Offerdahl v. State,* 17 Wis. 2d 334, 336, 116 N.W.2d 809, 810 (1962). Since that time, however, a presumption of "openness" or a public attendance right under sec. 757.14, Stats., has been found to exist for a number of other court proceedings. *See State ex rel. Newspapers, Inc. v. Circuit Court,* 65 Wis. 2d 66, 221 N.W.2d 894 (1974) (immunity hearing in John Doe proceedings); *State ex rel. La Crosse Tribune v. Circuit Court,* 115 Wis. 2d 220, 235, 340 N.W.2d 460, 466 (1983) (voir dire proceeding); *State ex rel. Newspapers, Inc. v. Circuit Court,* 124 Wis. 2d 499, 370 N.W.2d 209 (1985), *cert. denied,* — U.S. —, 106 S. Ct. 806 (1986) (ex parte request to judge to issue criminal charges under sec. 968.02(3)). This open proceeding presumption is not without limitation. In *Newspapers,* 124 Wis. 2d at 508–09, 370 N.W.2d at 214, for example, this court

tions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

245

noted that a circuit court may exercise inherent discretionary power to limit admission to hearings under "compelling" circumstances.

Several recent United States Supreme Court cases contradict the analysis used in *Kennon,* adopting a position more closely aligned with later Wisconsin cases which support the presumption of openness. The Supreme Court held in *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596 (1982), that a trial judge improperly closed hearings on the preliminary motions and trial of a sexual assault case, and found that the Massachusetts statute, which mandated closure under all circumstances during the testimony of a minor victim in a sexual assault trial, was unconstitutional. The Court acknowledged a compelling state interest in safeguarding the physical and psychological well-being of a minor, but found that a case-by-case assessment of closure by the circuit court would best protect both the needs of the victim and the constitutional rights of others to access. Among the factors the Court required the trial judge to examine in making a "narrowly tailored" closure were the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives. *Id.* at 607–09.

*Globe* did not specifically address preliminary examinations and the claim made in that action was brought by members of the news media on first amendment grounds. In *Waller v. Georgia,* 467 U.S. 39 (1984), however, the Supreme Court held that arbitrary closure of a suppression hearing over the objection of the defendant violated that defendant's sixth and fourteenth amendment right to public trial. The Court reasoned that the aims and interests protected by requiring a trial to be public were no less pressing

in a suppression hearing, and that "the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." *Id.* at 46. The Court held that any closure of a suppression hearing over the objection of the accused must meet the balancing test established in *Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501 (1984) (*Press-Enterprise I*) (which found the public and the press have a qualified first amendment right of access to attend criminal voir dire examinations). Following the guidelines established in *Press-Enterprise I,* the Court in *Waller* required that:

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. *Waller,* 467 U.S. at 48.

Finally, *Press-Enterprise Co. v. Superior Court of California,* — U.S. —, 106 S. Ct. 2735 (1986) (*Press-Enterprise II*), reversed an order closing a preliminary hearing of a murder case because the trial court failed to consider whether alternatives short of closure would have protected the defendant's constitutional rights. The Court stated that the closure issue "cannot be resolved solely on the label we give an event, i.e., 'trial' or otherwise, particularly where the preliminary hearing functions much like a full scale trial." *Id.* at 2740. The Court reiterated that the presumption of access may be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to

247

serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* at 2741 (*quoting Press-Enterprise I,* 464 U.S. at 510).

The defendant here argues that the reasoning of *Waller,* though it examined a suppression hearing, applies with equal force when considering a sixth amendment public trial right as it pertains to preliminary examinations. In *Waller,* the Court stated:

> "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions" .... ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury.... These aims and interests are no less pressing in a hearing to suppress wrongfully seized evidence. ... In addition, a suppression hearing often resembles a bench trial: witnesses are sworn and testify, and of course counsel argue their positions. The outcome frequently depends on a resolution of factual matters. *Waller,* 467 U.S. at 46–7 (citations omitted).

Based on the Supreme Court's analysis in *Press-Enterprise II,* which specifically addressed closure of a preliminary hearing, and the Court's rationale in extending the sixth amendment public trial right in *Waller,* we hold that a preliminary examination is sufficiently analogous in the purposes and aims which support the public trial requirement that a qualified

sixth amendment public trial right must adhere when closure is sought by the complainant under sec. 970.03(4), Stats. We therefore overrule that part of the holding of *Kennon* which concludes that a qualified right to a public preliminary examination is not constitutionally guaranteed.

Our ruling that the sixth amendment public trial right extends to preliminary examinations as it pertains to closure issues is not intended to extend any other rights a defendant may have at trial to the statutorily-created preliminary examination. Cases such as *State ex rel. Huser v. Rasmussen,* 84 Wis. 2d 600, 613–15, 267 N.W.2d 285, 292–93 (1978) (defendant has no right to cross examine a witness for general trustworthiness at preliminary hearing), *State v. Marshall,* 92 Wis. 2d 101, 115, 284 N.W.2d 592, 598 (1979) (defendant not allowed to introduce impeachment evidence), and *State ex rel. Welch v. Waukesha County,* 52 Wis. 2d 221, 189 N.W.2d 417 (1971) (where defendant is indicted by grand jury, no right to preliminary hearing exists)[5] are, therefore, not affected by this holding.

We must next examine whether the hearing in this case was "closed" by the court's order thereby infringing upon the defendant's sixth amendment

---

[5]This holding in *Welch* has been subsequently abrogated by sec. 968.06, Stats., (1979), which states:

> **Indictment by grand jury.** Upon indictment by a grand jury a complaint shall be issued, as provided by s. 968.02, upon the person named in the indictment and the person shall be entitled to a preliminary hearing under s. 970.03, and all proceedings thereafter shall be the same as if the person had been initially charged under s. 968.02 and had not been indicted by a grand jury.

right to public trial. The state contends that the hearing was not "closed" because the news media were allowed to be present. The defendant claims that attendance by the media is not the same as attendance by the general public.

The United States Supreme Court has not specifically addressed the issue of whether the news media may substitute for the general public at a judicial proceeding. It has held that newspaper, television and radio reporters are all entitled to the same right of access as the general public to court hearings. *Estes v. Texas,* 381 U.S. 532, 540 (1965); *see also Pell v. Procunier,* 417 U.S. 817, 834 (1974) (no constitutional duty of the government to give the press special access to information not shared by members of the public generally); *accord State ex rel. La Crosse Tribune v. Circuit Court,* 115 Wis. 2d 220, 241, 340 N.W.2d 460, 467–68 (1983) (standing of reporters to attend a voir dire hearing not a special right but the same right as that of the public).

Under the plain language of sec. 757.14, Stats., there is a presumption of openness which extends to "every citizen" for "the sittings of every court." The statute makes no exception or special provision for members of the press, though in *State ex rel. Newspapers, Inc. v. Circuit Court,* 65 Wis. 2d at 69, 221 N.W.2d at 895, this court held that a journalist may invoke the provisions of this statute as a citizen and a member of the public.

Having the same right of access as the public is, however, not synonymous with being representative of or a substitute for the general public. In first amendment actions, though it was members of the media who sued as plaintiffs, the Supreme Court

framed the right of access as one adhering in the general public, and, collaterally, in members of the media. In *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 578 (1980), the Court stated that the trial courtroom is a "public place where the people generally—and representatives of the media—have the right to be present, and where their presence historically has been thought to enhance the integrity and quality of what takes place." The Supreme Court has further emphasized that openness of a "public" trial is met where "*anyone* is free to attend" a hearing, and it has balanced the "right of everyone in the community to attend" with the defendant's constitutional rights. *Press-Enterprise I,* 464 U.S. at 508 (emphasis in original).

Though the press may serve an important role in allowing a circuit court to mitigate or narrowly tailor a closure order, we find that only allowing news media attendance does not serve as an adequate replacement for the right of the general public to be present at a hearing. The order of the circuit court in this case created a closure sufficient to allow the defendant to invoke the protections of his sixth amendment public trial right.[6]

---

[6]Some courts have held that a defendant's right to public trial is not infringed where media attendance is allowed at a hearing but attendance of the general public is curtailed. *See, e.g., United States v. Fay,* 350 F.2d 967 (2d Cir. 1965), *cert. denied,* 384 U.S. 1008 (1966); *People v. Morgan,* 152 Ill. App. 3d 97, 504 N.E.2d 172 (1987); *Commonwealth v. Hobbs,* 385 Mass. 863, 434 N.E.2d 633 (1982); *State v. Smith,* 123 Ariz. 243, 599 P.2d 199 (1979). These decisions were not, however, based on findings that these hearings were "public" under the meaning of the sixth amendment because the members of the media were allowed to attend. Instead, these courts determined, under the facts particular to each case, that

The right to a public preliminary examination is, however, not absolute. A court's closure order may be a supportable and proper exercise of the court's discretion under appropriately compelling circumstances. A final issue remains in analyzing this case as to whether the circuit court properly exercised its

the trial court appropriately exercised its discretion in making its closure order. They therefore do not provide authority to support the proposition that the press may substitute for the general public at a judicial proceeding.

Other jurisdictions have concluded that denying public admission infringes upon the defendant's right to a public trial, even where the press is allowed to attend a hearing, absent a narrow tailoring of the court's closure order to meet specific exigencies. *See, e.g., Davis v. United States,* 247 F. 394 (8th Cir. 1917) (direction to "clear the courtroom," including exclusion of decorous spectators, though newspaper reporters were allowed to remain, violated defendant's sixth amendment right); *United States v. Sielaff,* 561 F.2d 691 (7th Cir.), *cert. denied,* 434 U.S. 1076 (1977) (trial court acted within scope necessary to serve legitimate interest in excluding curiosity seekers and those only interested in case progress and witness testimony, but allowing press and other members of public with substantial interest in knowing what transpired to attend); *State ex rel. Smith v. District Court,* 201 Mont. 376, 387–88 n. 1, 654 P.2d 982, 987 n. 1 (1982) (adopts presumption, under American Bar Association Standards for Criminal Justice (2d ed. 1978), that pretrial proceedings shall be "open to the public, including representatives of the news media" unless clear and present danger to fairness of trial exists); *State v. Schmit,* 273 Minn. 78, 83–84, 139 N.W.2d 800, 804–05 (1966) (all spectators may not be indiscriminately excluded during entire trial solely because of the obscene nature of the crime and of the testimony likely to be presented); *Thompson v. People,* 156 Colo. 416, 399 P.2d 776 (1965) (defendant in rape case was denied right to public trial where spectators, including defendant's friends but not including press, court officials and parties' relatives, were excluded).

discretion, utilizing sec. 970.03(4), Stats., to close this defendant's preliminary examination.

We first examine the constitutionality of the statute which the circuit court relied upon as the basis of its order. The constitutionality of a statute is a question of law which this court reviews de novo. *Bachowski v. Salamone,* 139 Wis. 2d 397, 404, 407 N.W.2d 533, 536 (1987).

> In analyzing a statute's constitutionality, "[e]very presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality." Thus "[i]f there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had such fact in mind and passed the act pursuant thereto." *Chappy v. Labor & Indus. Review Comm'n.,* 136 Wis. 2d 172, 185, 401 N.W.2d 568, 574 (1987) (citations omitted).

We agree with the state's and defendant's analysis of federal case law and their conclusion that the portion of sec. 970.03(4), Stats., which mandates closure of sexual assault preliminary examinations solely upon the request of the complaining witness, does not comport with defendant's public trial right if the defendant objects to closure. We find, however, that the remaining discretionary exclusion provision of sec. 970.03(4) together with the circuit court finding requirements established in *Waller,* 467 U.S. at 48, and *Press-Enterprise II,* 106 S. Ct. at 2741, sufficiently protects the defendant's public trial right. It provides for sufficient balancing of the parties' interests, as well as upholding the laudable purpose of sec.

253

970.03(4) in protecting victims of sexual assault from undue emotional pressure or harassment. We therefore adopt and imply the inclusion of the factors established in those cases to create a reasonable basis upon which the discretionary closure provision of the statute is sustained.

When a complainant seeks closure under sec. 970.03(4), Stats., the state must first advance a compelling interest which would be likely to be prejudiced absent closure, such as the need to protect a sexual assault victim from undue embarrassment and emotional trauma. Where the circuit court finds this or any other appropriately compelling basis for closure, it must narrowly tailor its closure order. In determining the breadth of the order, the circuit court must consider reasonable alternatives to full closure of the entire preliminary examination. In addition, the circuit court must articulate specific findings adequate to support closure. Factors such as those suggested by *Globe,* 457 U.S. at 607–09, including the victim's age, psychological maturity and understanding, the nature of the crime, and the desires of the victim and the victim's family, may provide guidance in making these findings. The circuit court should give great, but not exclusive, weight to the desires of the victim, since this is clearly shown to be proper public policy as evidenced by the enactment of sec. 970.03(4).

At motions on the state's closure order the circuit court in this case stated:

> One, I would grant the State's request, assuming that to be at the request of the juvenile victim and authorize pursuant to Wisconsin statute the closed proceedings and the closure of the proceedings will not pertain to accredited members of the media

who desire to disseminate the proceedings and report the proceedings without disclosing the principal, in particular the juvenile, to the public but to report that the courts are operating hopefully on a regular basis and an open basis. I think, however, some consideration need be given to the victim and certainly at the preliminary stages I would allow the proceedings to be closed to the members of the public but not to news representatives and, therefore, I would respectively deny the motion to Mr. Glynn [defendant's counsel] to close [sic] the preliminary examination.

I believe that an accommodation can be made to the principle of open courts, the defendant's understandable desire to have the proceedings as regular as possible and the needs and concerns of the State and the juvenile victim and I think that an order closing the proceedings to the general public but leaving them open to the members of the news media preserves at least at the preliminary stages the defendant's right to the extent reasonably possible giving, I feel, fair consideration to the needs of the victim and the concerns for the victim about these very emotional matters. Motions Transcript at 4.

What was lacking in the circuit court's analysis was a factual basis, utilizing factors such as those presented in *Globe,* to support its order. The court further failed to articulate why inclusion of the press would not infringe upon the compelling interest advanced by the state while inclusion of members of the general public would. We, therefore, vacate this order with instructions that the circuit court hold a hearing on the state's request for closure and reach a conclusion based on the exercise of its discretion prior

255

to making any order respecting closure. A circuit court under such circumstances must fully articulate its findings consistent with the guidelines established in this opinion sufficient that a reviewing court may be able to determine whether the closure order was properly entered.

*By the Court.*—The petition for supervisory writ is granted. The order of the circuit court is vacated and the cause remanded for further proceedings.

LOUIS J. CECI, J. *(concurring)*. I join the opinion of the majority and agree with the reasoning used by the court to reach its result in this case.

I write separately to point out that in its certification request, the court of appeals, in a footnote, found it necessary to urge this court to "expedite" our consideration of this certification request. (Certification, p. 11, n. 4.)

The petition for a supervisory writ was filed in the court of appeals on February 6, 1987. Almost two months later, the court of appeals filed its certification request with this court. This two-month delay was the responsibility of the court of appeals. By requesting that this certification be "expedited," the court of appeals implies that in the past this court has not disposed of certification requests in a speedy manner. That is simply not true.