STATE EX REL. RIZZO, Appellant, v. COUNTY COURT OF KENOSHA COUNTY, Respondent.*

*October 31—November 29, 1966.*

* Motion for rehearing denied, without costs, on January 31, 1967.

644

For the appellant there was a brief by *Frinzi, Catania & Neubecker* of Milwaukee, and oral argument by *Dominic H. Frinzi* and *Nicholas C. Catania*.

For the respondent the cause was argued by *Francis R. Croak* of Milwaukee, special prosecutor, with whom on the brief were *Bronson C. La Follette*, attorney general, and *LeRoy L. Dalton*, assistant attorney general.

HANLEY, J. The following issue is raised on this appeal:

Where the relator has answered under the compulsion of a court order, pursuant to sec. 885.34, Stats., questions relating to pre-1959 gambling activities in Milwaukee county, will prohibition lie to prevent prosecution of the relator for gambling in Kenosha county after 1959?

The relator contends that, having been compelled to testify as to the three specific questions and any questions supplementary thereto, he is entitled as a matter of law

to be free from any prosecution on any charges of gambling.

Statutory procedures which allow testimony to be compelled by court order and which grant immunity from prosecution to the witness so testifying are based on the theory of *quid pro quo*. In exchange for information that a prosecutor could not otherwise obtain, the witness receives immunity from prosecution for the crimes to which his testimony relates. The statute merely creates an immunity coextensive with the constitutional privilege against self-incrimination. 8 Wigmore, Evidence (McNaughton rev. 1961), pp. 512, 513, sec. 2282. *State v. Davidson* (1943), 242 Wis. 406, 409, 8 N. W. (2d) 275.

The basic principles with regard to the immunity of a witness who has been compelled to divulge incriminating statements were made explicit in the landmark case of *State v. Murphy* (1906), 128 Wis. 201, 219, 107 N. W. 470 (Opinion of MARSHALL, J.). In independent opinions, Mr. Justice MARSHALL and Mr. Justice WINSLOW articulated the fundamental rules:

"(1) The statute does not wipe out the offense about which the witness might have refused to answer. It creates a bar to a prosecution for the offense. The offense with its attendant moral turpitude is left just the same, but by force of the statute the public is remediless.

"(2) The statute is not broader than the constitutional guaranty for which it was intended to be a 'substitute.' The very idea of a substitute suggests the limitation of one as that of the other. In other words, that they are equivalents, one being exchanged, by force of the law, for the other.

"(3) The statute does not immune because of evidence given other than that of a self-incriminatory character; such as without the statute would be obscured by the constitutional privilege of silence.

"(4) For the statute to operate there must be evidence under real compulsion, not mere right of compulsion. . . .

"(5) . . . In other words, the law contemplates only a situation as regards an event, whether denominated a transaction, a matter, or a thing, where, under the con-

stitutional privilege of silence, the person compulsorily called to testify might refuse to speak, but for removal of the precise danger which such privilege was designed to shield him from. So the statute becomes active whenever and wherever the constitutional privilege would otherwise operate; and its activity ceases when that would otherwise not intervene. It is a substitute, and that only." 128 Wis. at pages 219, 220 (Opinion of MARSHALL, J.).

Mr. Justice WINSLOW went on to explain:

". . . In my judgment the immunity statute is as broad as the privilege which it was passed to obviate, and no broader. In order to gain the immunity the witness must, in my opinion, be *compelled* to testify. He could waive his constitutional privilege by testifying voluntarily, he can likewise waive his statutory immunity by doing the same thing. I do not think that compelling a person to appear by subpoena can properly be considered as compelling him to testify. It was not so considered with regard to the constitutional guaranty. A person might be compelled by subpoena to attend, but might testify voluntarily when so in attendance, and thus waive his privilege. In like manner I think he may waive his immunity. Otherwise the statute becomes a snare to the prosecutor and a means of avoiding the just consequences of crime. I do not mean by this that it is necessary for the witness to refuse to answer, but simply that he should make known the fact that he does not testify voluntarily but only in obedience to the command of the law and the court. When this has been done he gains immunity from prosecution on account of the transaction or matter concerning which he testifies, and not before.

"In this case, therefore, I think there was no immunity on two grounds: First, because the defendant testified voluntarily before the grand jury; he was not compelled to testify. Second, because he did not give any testimony concerning the transaction or thing for which he is now being prosecuted." 128 Wis. at pages 221, 222 (Opinion, WINSLOW, J.).

The principles enunciated by Justices MARSHALL and WINSLOW were explicitly approved by a unanimous court in *Carchidi v. State* (1925), 187 Wis. 438, 442, 443, 204 N. W. 473. The approach taken by the Wisconsin supreme

court with regard to an immunity statute was previously held not to violate federal constitutional privilege against self-incrimination. *Brown v. Walker* (1896), 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819.

Thus basically a witness will be immune from prosecution as to those offenses about which he testified if (1) he was actually compelled to testify under the statute, and (2) the testimony that he divulged while under compulsion is part of or led to evidence which supports the prosecution from which he claims immunity. Under sec. 885.34, Stats., there is the additional requirement that a witness will receive immunity only if compelled to testify "by order of the court on motion of the district attorney." In *State ex rel. Jackson v. Coffey, supra,* this court held that "order of the court" in the statute means an order issued from an open court sitting as such, not by a judge sitting as magistrate in a John Doe proceeding.

In application the basic requirements for immunity outlined above have been explained by the following complementary principles:

(1) The witness must claim his privilege against self-incrimination as a condition to any immunity under the predecessor to sec. 885.34, Stats. *State v. Davidson, supra.*

(2) A witness who testifies without objection to questions which elicit incriminating testimony thereby waives his privilege and is not entitled to immunity from prosecution based on such testimony. *State v. Grosnickle* (1926), 189 Wis. 17, 26, 206 N. W. 895.

(3) A witness has no right to claim the privilege where his answers could not be used as a basis for, or in aid of, a prosecution against him. *Brown v. Walker, supra.*

(4) "A matter is incriminating or tends to incriminate whenever, in the probable operation of law or the ordinary happening of events, there would be reasonable grounds to apprehend dangers to the witness from his being compelled to answer questions about which he has particular personal knowledge." Maloney, A Code of

Evidence for Wisconsin—Self-Incrimination, 1946 Wisconsin Law Review, 147, 155.

(5) "The privilege afforded not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant. . . . To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States* (1951), 341 U. S. 479, 486, 487, 71 Sup. Ct. 814, 95 L. Ed. 1118.

(6) Where a defendant claims that prosecution is barred because testimony he gave under compulsion after claiming his privilege is being used as a link in the chain of evidence needed to prosecute him, and where this claimed link is not evident or probable from the fact of the criminal pleadings and the testimony given under compulsion, the burden is on the defendant to show that the evidence against him was obtained by means of his testimony. *State v. Lloyd* (1913), 152 Wis. 24, 31, 32, 139 N. W. 514.

Application of the above rules to Rizzo's case reveals a total failure of Rizzo to meet the test of even one of the above requirements for the following reasons:

(1) Rizzo's testimony concerning gambling activities in Kenosha county was not given under compulsion. Compulsion to testify under sec. 885.34, Stats., must be "by order of the court on motion of the district attorney." Before Rizzo was asked about his Kenosha county activities the prosecutor specifically warned Rizzo that he would have no immunity on the following questions and the magistrate allowed him to confer with counsel. In addition, the order of the *court* compelled Rizzo to answer only questions about the Ogden Social Club in Milwaukee and about the murder of Tony Biernat. The order specified that other testimony would not be immune.

(2) Even if Rizzo had been compelled to answer questions about gambling in Kenosha county, none of his

testimony was incriminating. His testimony was that his memory failed him about practically all of his activities, but that he did know "Wheezer" Covelli, Frank Balestreri, and a few other people.

(3) In fact, none of Rizzo's testimony during the entire John Doe proceeding could be used as a basis for prosecuting him. The only testimony which would be incriminating was that he had gambled and "worked the stick" at the Ogden Social Club in Milwaukee more than six years previous to the hearing. But prosecution for that offense would surely be barred by the statute of limitations (sec. 939.74, Stats.), and as to questions about such crimes Rizzo could not rightfully claim the privilege. *Brown v. Walker, supra.*

(4) Rizzo never claimed his privilege as to questions about the Kenosha county activities and by answering he waived his right to claim immunity.

(5) Rizzo claims that his answers given under immunity were used as a link in the chain of evidence which supports the present prosecution. Yet no connection is apparent between Rizzo's previous gambling in Milwaukee and the present charges. Since there is no apparent connection, it is Rizzo's burden to show the court that a substantial connection could exist. Rizzo has offered nothing but the orbiting speculations of counsel.

Rizzo also contends that because gambling is a continuing activity any compelled testimony must necessarily bar Rizzo's prosecution on any gambling charges. Such is not the law. Assuming that Rizzo's compelled testimony would give him immunity for gambling offenses in Milwaukee prior to 1959, such immunity would not grant him a general amnesty which would defeat the very purpose of the John Doe investigation, which is to aid in the prosecution of criminals. *Carchidi v. State, supra,* pages 442, 443.

In addition, there is the venue statute which requires proof of the offense having been committed in a particular county.

We entertain some doubt as to whether this is a proper case in which to have invoked the extraordinary remedy of a writ of prohibition. The briefs of counsel do not touch upon this issue. We find it unnecessary to decide this point of jurisdiction inasmuch as we have reached the conclusion that there has been no showing to support the issuance of a writ of prohibition against Kenosha county court, branch 2. It is not suggested that the relator may not raise the issue in his preliminary examination or in his trial at a proper time if the proof indicates that the rights accorded to him in compelling his testimony have been abused.

*By the Court.*—Order affirmed.

GORDON, J. (*concurring*). I reach the same result expressed in the majority opinion but do so only because upon this application for prohibition the record does not adequately establish that the answers made by the appellant under judicial compulsion furnished a link in the chain of evidence for the present prosecution.

I respectfully disagree, however, with the court's holding that it is the accused's burden to establish the connection. When the state compels a witness to forsake his constitutional privilege to remain silent, the question as to whether a subsequent prosecution is barred should depend on whether the evidence needed for the prosecution was triggered by the testimony given by him under compulsion. In my opinion, it is wrong to impose upon the witness the burden of proving such nexus. When the issue is raised by the accused, it is enough if there is a reasonable probability that the compelled answers furnish the link to the evidence needed for prosecution; it is the state which should then have the obligation of contradicting this. But cf. *State v. Lloyd* (1913), 152 Wis. 24, 32, 139 N. W. 514.

In *Counselman v. Hitchcock* (1892), 142 U. S. 547, 585, 12 Sup. Ct. 195, 35 L. Ed. 1110, it is stated:

"It is quite clear that legislation cannot abridge a constitutional privilege, and that it cannot replace or supply one, at least unless it is so broad as to have the same extent in scope and effect. . . .

"We are clearly of opinion that no statute which leaves the party or witness subject to prosecution after he answers the criminating question put to him, can have the effect of supplanting the privilege conferred by the Constitution of the United States."

The majority opinion states that none of Mr. Rizzo's "testimony during the entire John Doe" could qualify as a basis for his subsequent prosecution. This is a conclusion to which I cannot subscribe because I do not think it is sufficiently established by the record. It does not shock me to think that the compelled admissions as to gambling in Milwaukee and of his having been a "stick man" at a gambling place in Milwaukee could have produced the link needed for a later prosecution as to gambling in a neighboring community. Mr. Rizzo should have the right to raise this issue by way of a motion to quash, and if the trial court believes it reasonably probable that the compelled testimony produced the needed link in the chain of events, then the state should be required to show that the prosecution's case is not connected to the evidence which had been given by him under compulsion.

The majority opinion points out that the prosecutor specifically warned Mr. Rizzo that he would have no immunity as to subsequent questions and that the magistrate also informed him that his subsequent testimony would not be immune. In my opinion, it is inappropriate for this court to rely on those warnings; I believe them to be irrelevant. The test is whether the answers given under compulsion supplied the necessary link for the sub-

sequent prosecution; if they did, the attempted warnings of the prosecutor and the magistrate were ineffectual in depriving the witness of his immunity.

The court also concludes that Mr. Rizzo "never claimed his privilege as to questions about the Kenosha county activities and by answering he waived his right to claim immunity." In my opinion, this observation on the part of the court presupposes that there is no possible nexus between gambling in Milwaukee and subsequent gambling in Kenosha. It begs the question whether there is in fact a link between the testimony given under compulsion and the subsequent prosecution. One might fairly ask why in the Kenosha John Doe proceedings it was necessary to interrogate Mr. Rizzo concerning gambling in Milwaukee; the answer might well be that there was a tie-up between the gambling in the two localities. If the questions were in fact relevant to the Kenosha investigation and of sufficient importance to have warranted the giving of immunity, we should not foreclose the possibility of an evidentiary link.

I share the doubt expressed in the court's opinion that upon this record it was proper to proceed by way of an application for a writ of prohibition. However, Mr. Rizzo should not be barred from raising the question whether his Kenosha prosecution stemmed out of evidence garnered as a result of his insulated testimony. It is my belief that he should be free to raise such issue by a motion to quash without the impediment of the conclusions contained in the majority opinion to the effect that he has waived his privilege and that his testimony did not relate to gambling in Kenosha county.

I am authorized to state that Mr. Justice BEILFUSS and Mr. Justice HEFFERNAN join in this concurring opinion.

The following memorandum was filed January 31, 1967.

PER CURIAM (*on rehearing*). The appellant's brief on rehearing reargues the same issues presented upon appeal and especially the important question of whether the state has the burden of proving the evidence against the defendant was not obtained by means of his testimony given under immunity or whether the defendant has the burden to prove it was. As the court remains divided on this issue, the majority opinion stands. However, what was said as to the insufficiency of the evidence is not to foreclose the defendant from raising the question, or to be deemed *res adjudicata* of the issue, of whether the testimony he gave under immunity at the John Doe proceeding provided the link for the basis of the present prosecution pending in the county court of Kenosha county if the issue is raised in that proceeding. The language of the opinion is restricted to whether the writ of prohibition should have issued on the facts presented.